## Case No. 10,094.

### The NELLIE.

[8 Ben. 261.] [1]

District Court, E. D. New York. Nov., 1875.

TUG-BOAT AND TOW—CONTRACT—DAMAGE FROM ICE.

A contract was made on behalf of a tub-boat to tow a canal-boat from the foot of Fourteenth street, East river, to One Hundred and Thirty-First street North river, and there leave her in a safe and suitable place for the discharge of her cargo. Under this contract the tug-boat towed the canal-boat to the foot of One Hundred and Thirty-First street, North river, where she was placed at the north side of a pier. This was then a safe place, but it was one where on the change of the tide the boat might be injured by ice. Demand was made of the captain of the tug-boat that he should place the canal-boat on the lower side of the pier, but this was not done and the canal-boat moved up to the bulk-head and began to discharge her cargo. About four hours after, on the change of the tide, ice was brought down upon the canal-boat and crushed her. The owners of the canal-boat and of her cargo filed libels to recover for the damage: *Held*, that no breach of the contract on the part of the tug-boat had been shown and, that the libels must be dismissed.

In admiralty.

BENEDICT, District Judge. These two actions which have been tried together, are brought, one by the owner of the canal-boat Waddy, and the other by the owner of her cargo, to recover damages for breach of a towage contract.

The allegation of the libellant, William Nelson, Jr., the owner of the cargo, is, that a contract was entered into whereby the tug-boat "Nellie" was to tow the canal-boat "Waddy" from the foot of Fourteenth street, East river, to 131st street, North river, and there leave her in a safe and suitable place for the discharge of the cargo with which she was laden.

The breach averred is, that the canal-boat was not left in a safe and suitable place, but in the tide-way about 100 feet from the end of the pier, at the foot of 131st street and in an improper and unsafe place, where there was great danger of her being injured or carried away by the tide and floating ice. In the libel of Whipple, the owner of the boat, the averments are somewhat different, but in substance the same. The damages claimed are those resulting from injuries sustained by the canal-boat and her cargo by reason of her having been crushed by ice on the same day, while she lay at the bulkhead on the northerly side of the pier at the foot of 131st street—a place to which it is said she was compelled to go by reason of having being left by the tug in the tide-way.

A careful examination of the libel shows that the contract thus set forth is not, as seems to have been supposed, a contract to take the boat to the lower side of the pier

at 131st street, but simply to tow her to 131st street, North river, or to Manhattan-ville, and there leave her in a safe and suitable place for the discharge of her cargo. Assuming, then, the contract to be that set forth in the libel, my opinion is, that the tug-boat is not responsible for the injuries sustained by the canal-boat from ice, which, it is shown, came down upon her some few hours after she had been left by the tug moored at the pier.

The evidence shows, beyond dispute, that the canal-boat was not left in the tide-way about 100 feet from the end of the pier, as averred in the libels, but that she was placed alongside the upper side of the pier, at a place where she was at once to be made fast, and where she could at once proceed to discharge her cargo.

It is true, demand was made at the time that the boat should be placed at the lower side of the pier, and it is also true that the upper side of the pier was a place where injury might result, if, upon a change of tide, ice should come down the river. But the contract set forth raised no obligation to leave the canal-boat at the lower side of the pier.

The contract set forth was performed when the boat was left at the foot of 131st street, fast to the pier, at a place then safe and suitable for the discharge of her cargo.

A breach of such contract is not made out by showing that some four hours after the termination of the service, and at a different time of tide, the place where the boat was left became dangerous because of ice which then came down the river.

The libels must, therefore, be dismissed and with costs.